UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JAMES BERTRAND, *et al.*,

        Plaintiffs,        9:14-CV-1456 (GTS/DEP)
                                        (LEAD CASE)

v.

CRAIG DEMMON, *et al.*,

        Defendants.
_____

JAMEL WEAVER, *et al.*,

        Plaintiffs,        9:15-CV-0403 (GTS/DEP)
                                        (MEMBER CASE)

v.

CRAIG DEMMON, *et al.*,

        Defendants.
_____

SHANE GORDON, *et al.*,

        Plaintiffs,        9:15-CV-1233 (GTS/DEP)
                                        (MEMBER CASE)

v.

CRAIG DEMMON, *et al.*,

        Defendants.
_____

JONATHAN HINES, *et al.*,

        Plaintiffs,        9:16-CV-0061 (GTS/DEP)
                                        (MEMBER CASE)

v.

CRAIG DEMMON, *et al.*,

        Defendants.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| LAW OFFICES OF ELMER R. KEACH<br>  Plaintiffs<br>One Pine West Plaza, Suite 109<br>Albany, New York 12205 | ELMER R. KEACH, III, ESQ.<br>MARIA K. DYSON, ESQ. |
| HON. ERIC T. SCHNEIDERMAN<br>Attorney General for the State of New York<br>  Counsel for Defendants<br>The Capitol<br>Albany, New York 12224 | TIMOTHY P. MULVEY, ESQ.<br>Assistant Attorney General |

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

Currently before the Court, in these consolidated prisoner civil rights actions filed by ten inmates ("Plaintiffs") against ten individuals ("Defendants") employed by the New York State Department of Corrections and Community Supervision ("DOCCS") at Bare Hill Correctional Facility in Malone, New York, is Defendants' motion for an Order staying the upcoming trial of Plaintiffs' consolidated actions, which is currently scheduled to commence on July 17, 2017, pursuant to the *Colorado River* abstention doctrine. (Dkt. No. 59.) For the reasons discussed below, Defendants' motion is granted.

## I.    RELEVANT BACKGROUND

Because this Decision and Order is intended primarily for the review of the parties, the Court will assume the reader's familiarity with the particular nature of the Complaints' claims and supporting factual allegations, and will respectfully refer the reader to Part I.B. of the Court's Decision and Order of August 5, 2015, in *Pierce v. Demmon*, 14-CV-1028 (N.D.N.Y.) (Suddaby, J.), which accurately summarizes those claims and allegations. For purposes of this motion, however, the Court notes the following procedural developments that are relevant to the issue of abstention under *Colorado River*.

All ten Plaintiffs in the present matter brought suit in the New York State Court of Claims asserting largely identical factual allegations and claims for intentional tort and negligence against the State of New York ("the State action"). (Dkt. No. 59, Attach. 1, ¶¶ 2, 5 [Mulvey Aff.]; Dkt. No. 60, at 4-5 [Pls.' Opp'n Mem. of Law].) The State action was brought to trial from February 6 through February 16, 2017, before the Honorable Frank P. Milano. (*Id.*, ¶ 2.) During the trial, nine of the ten Plaintiffs testified, all of whom presented substantially similar accounts of the factual events supporting their claims. (*Id.*, ¶ 5.) The trial was not bifurcated and Plaintiffs were represented by the same counsel that is representing them in the present matter. (*Id.*, ¶ 3.) At the close of trial, Judge Milano reserved decision on all claims, pending submission of post-trial briefs by the parties. (*Id.*, ¶ 10.) The remaining claims in this case (i.e., the federal action before this Court) are Plaintiffs' claims for cruel-and-unusual punishment and supervisory liability under the Eighth Amendment of the U.S. Constitution and 42 U.S.C. § 1983. (Dkt. No. 48, at 21-22 [Decision and Order].)

## II. THE PARTIES' BRIEFINGS ON DEFENDANTS' MOTION

### A. Defendants' Memorandum of Law

Generally, in their memorandum of law, Defendants assert seven arguments. (Dkt. No. 59, Attach. 34 [Defs.' Mem. of Law].)

First, Defendants argue that, in evaluating whether *Colorado River* abstention is appropriate, the Court must consider the following six factors: (1) whether the controversy involves a *res* or property over which one of the courts has assumed jurisdiction; (2) whether the federal forum is less inconvenient for the parties than is the other forum; (3) whether staying or dismissing the federal action would avoid piecemeal litigation; (4) the order in which the actions

were filed, and whether proceedings have advanced more in one forum than in the other; (5) whether federal law provides the rule of decision; and (6) whether the state procedures are adequate to protect the plaintiff's federal rights. (*Id.* at 12.)[1] As an initial matter, Defendants argue that this action and the State action are parallel because both are virtually identical with respect to the allegations made against them as state employees in this action and the allegations asserted against the State of New York in the Court of Claims. (*Id.* at 11-12.)

Second, with respect to the first *Colorado River* factor, Defendants concede that, because this is not an *in rem* action, and because neither this Court nor the Court of Claims has assumed jurisdiction over any *res* or property, the first factor, while neutral and/or inapplicable, effectively weighs against abstention. (*Id.* at 13-14.)

Third, with respect to the second *Colorado River* factor, Defendants once again concede that, because the fora are both located within the Northern District of New York (i.e., that this Court's forum is just as convenient as the one in the State action), this factor also effectively weighs against abstention. (*Id.* at 14.) However, Defendants argue that, while the neutrality of this factor weighs against abstention, it does so only "slightly" under case precedent. (*Id.*)

Fourth, with respect to the third *Colorado River* factor, Defendants argue that this is "by far the most important factor" in the analysis and weighs heavily in favor of abstention because most, if not all, of the evidence Plaintiffs offered during the recent trial in the State action will be the same in this action should it proceed to trial. (*Id.* at 14-15.) Specifically, during the trial in the State action, Defendants argue that the following evidence was considered: (1) testimony

---

[1] Page citations refer to the page numbers used on CM/ECF rather than the actual page numbers contained in the parties' respective motion papers.

from nine of the ten Plaintiffs as well as four of the Defendants; (2) testimony from the parties' respective medical experts; (3) testimony from at least ten witnesses regarding DOCCS pat-frisk procedure, including how DOCCS officers are trained to conduct pat-frisks, what alternative pat-frisk positions can be employed in any given situation, and how Plaintiffs were pat-frisked on the night in question; (4) testimony from the Bare Hill Superintendent, the Deputy Superintendent for Security, and former DOCCS Captain John Rourke about the procedure for investigating an incident where an inmate is "slashed" with a weapon, (5) all of Plaintiffs' respective medical records; and (6) all of Plaintiffs' respective inmate grievances as well as testimony from Lt. Terrance White who investigated and interviewed Plaintiffs about the incident in question. (*Id.*)

Fifth, with regard to the fourth *Colorado River* factor, Defendants argue that the sequence of litigation has generally consisted of Plaintiffs having filed their respective state law actions approximately one year or more before commencing the present action. (*Id.* at 16.) Defendants further argue that the most compelling consideration under this factor should be the fact that the trial in the State action has already been completed. (*Id.*)

Sixth, with regard to the fifth *Colorado River* factor, Defendants argue that this factor is neutral because the nature of Plaintiffs' Eighth Amendment claims and state law claims are exactly the same. (*Id.* at 17.) Indeed, if anything, Defendants argue that this consideration weighs in favor of abstention. (*Id.*) Furthermore, Defendants argue that, although the Court of Claims cannot consider federal constitutional causes of action, many federal district courts in the State of New York have held that, in the context of collateral estoppel, a plaintiff may not bring a civil rights claim when he/she has already lost their case in the Court of Claims on state law claims arising out of the identical alleged incident. (*Id.*)

Seventh, and finally, with regard to the sixth *Colorado River* factor, Defendants argue that the parallel litigation in the Court of Claims has adequately protected Plaintiffs' Eighth Amendment rights and now offers a "complete and prompt" resolution of this dispute because the trial in the State Action has been completed with no need to pursue another trial of the same issues in this Court. (*Id.* at 17-18.)

B.  **Plaintiffs' Opposition Memorandum of Law**

Generally, in opposition to Defendants' motion, Plaintiffs assert the following two arguments. (Dkt. No. 60 [Pls.' Opp'n Mem. of Law].)

First, Plaintiffs argue that, although the factual allegations in this action and the State action are identical, several important differences exist that are critical to the Court's analysis of abstention under *Colorado River*. (*Id.* at 4.) Specifically, Plaintiffs argue that, because Plaintiffs Hines, Salas, Santos, E. Jackson, D. Jackson, and Evans were not able to preserve their intentional tort claims under state law due to the one-year statute of limitations governing those claims they were only able to pursue their negligence claims in the State action. (*Id.* at 4-5.) Furthermore, Plaintiffs argue that a determination as to negligence does not substantiate a claim for deliberate indifference to their health and safety. (*Id.* at 6.) Indeed, Plaintiffs argue that, even if the Court of Claims finds Defendants were negligent but that they did not engage in intentional conduct, the Court of Claims still has not considered the question of deliberate indifference because deliberate indifference entails something more than mere negligence but something less than intentional conduct. (*Id.* at 6.) Moreover, Plaintiffs argue that a favorable verdict on their claims in this Court would not implicate their negligence claims in the State action given the lower standard of proof. (*Id.*) However, Plaintiffs concede that a verdict for

Defendants in this Court finding no deliberate indifference would implicate a prospective finding on the issue of intent by the Court of Claims, and that they would notify the Court of Claims of any such verdict accordingly. (*Id.*)

Second, Plaintiffs argue that there are different parties and remedies in the two proceedings. (*Id.* at 7.) Specifically, Plaintiffs argue that the State action involves claims against the State of New York, in its capacity as employer of the Defendants, and that the State of New York cannot be sued in this Court under the Eleventh Amendment for monetary damages. (*Id.*) Similarly, the Court of Claims cannot consider claims alleging violations of the U.S. Constitution and can award only monetary damages and not punitive damages or attorneys' fees. (*Id.*) Conversely, the claims in this Court are for constitutional violations and are asserted against the individual Defendants for personal liability. (*Id.*) Plaintiffs further argues that this Court can award attorneys' fees under 42 U.S.C. § 1988 as well as punitive damages. (*Id.*)

### C. Defendants' Reply Memorandum of Law

In reply to Plaintiff's opposition memorandum of law, Defendants make the following three arguments. (Dkt. No. 64 [Defs.' Reply Mem. of Law].)

First, Defendants argue that, if the Court of Claims determines that they were not negligent, collateral estoppel would apply to Plaintiffs' federal claims and would necessitate dismissal of the consolidated actions. (*Id.* at 4.) In support of this argument, Defendants cite the point of law that a plaintiff "may not bring a § 1983 claim against individual officers where he has previously lost at trial against the State in the Court of Claims on state law claims arising out of the identical alleged incident." (*Id.* [quoting *Goodson v. Sedlack*, 212 F. Supp. 2d 255, 258 (S.D.N.Y. 2008)].)

Second, Defendants argue that, because Plaintiffs have conceded that all of the evidence presented during the trial in the State action will be the same in any trial before this Court, it is certainly possible that there could be conflicting or inconsistent outcomes from a separate trial. (*Id.* at 5.) For example, Defendants argue that the Court of Claims could conclude that the State of New York did not "torture" Plaintiffs, but, before any such decision is rendered, a jury empaneled by this Court could conclude that Defendants Hughes and Hough did wilfully and maliciously inflict "Chinese torture" on Plaintiffs while Defendants Demmon and LeBarge did not. (*Id.*) Defendants argue that this hypothetical scenario is precisely the type of situation that abstention is designed to prevent because of the potential for inconsistent outcomes. (*Id.*)

Third, and finally, with respect to the specific *Colorado River* factors, Defendants once again concede that the first and second factors are neutral and therefore weigh slightly in favor of abstention. (*Id.* at 6.) With respect to the fifth and sixth factors, Defendants argue that, because there is no distinct federal or state rule of decision to address whether Plaintiffs were "tortured" by Defendants, this factor is decidedly neutral and that the State action is adequate to address both Plaintiffs' intentional tort and negligence claims, which in turn protects their Eighth Amendment rights. (*Id.*) Conversely, Defendants argue that Plaintiffs would be limited to proving that they were deliberately and maliciously tortured by Defendants in a trial in this Court. (*Id.*)

With respect to the fourth factor, Defendants note that Plaintiffs have conceded that the actions in the Court of Claims were, in part, filed before the actions in this Court, which Defendants argue strongly favors abstention. (*Id.* at 7.)

With respect to the third factor, Defendants argue that Plaintiffs' argument in support of their assertion that proceeding to trial in this Court would not lead to piecemeal litigation is specious. (*Id.*) Specifically, according to Defendants, Plaintiffs appear to argue that they all have "preserved" their negligence claims by going to trial in the State action while certain Plaintiffs also have intentional tort claims being considered by the Court of Claims. (*Id.*) Meanwhile, Plaintiffs assert they are entitled to present the exact same facts and evidence to a jury in this Court, which may result in a jury verdict that may, or may not, negate the eventual ruling by the Court of Claims. (*Id.* at 7-8.) Defendants argue that this scenario is a perfect example of a waste of judicial resources that the avoidance of piecemeal litigation is supposed to prevent. (*Id.* at 8.)

## III. RELEVANT LEGAL STANDARD

In evaluating whether Colorado River abstention is appropriate, a federal district court must consider six factors, "with the balance heavily weighted in favor of the exercise of jurisdiction." *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 100 (2d Cir. 2012). As stated above in Part II.1. of this Decision and Order, these six factors are as follows:

> (1) whether the controversy involves a res over which one of the courts has assumed jurisdiction; (2) whether the federal forum is less inconvenient than the other for the parties; (3) whether staying or dismissing the federal action will avoid piecemeal litigation; (4) the order in which the actions were filed, and whether proceedings have advanced more in one forum than in the other; (5) whether federal law provides the rule of decision; and (6) whether the state procedures are adequate to protect the plaintiff's federal rights.

*Woodford v. Cmty. Action Agency of Greene Cty., Inc.*, 239 F.3d 517, 522 (2d Cir. 2001). The Supreme Court has explained that none of these factors alone is necessarily determinative, but,

instead, a federal district court must engage in a "carefully considered judgment[,] taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise. . . . Only the clearest of justifications will warrant dismissal." *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 818-19 (1976) (citation omitted); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983) (explaining that the "weight to be given to any one factor may vary greatly from case to case, depending on the particular setting of the case"). Moreover, "[w]here a *Colorado River* factor is facially neutral, that 'is a basis for retaining jurisdiction, not for yielding it.'" *Niagara Mohawk Power Corp.*, 673 F.3d at 101 (quoting *Woodford*, 239 F.3d at 522).

"Before engaging in the six-factor analysis, a court must make a threshold determination that the federal and state court cases are 'parallel.'" *Dalzell Mgmt. Co., Inc. v. Bardonia Plaza, LLC*, 923 F. Supp. 2d 590, 597 (S.D.N.Y. 2013) (citing *Dittmer v. Cty. of Suffolk*, 146 F.3d 113, 118 [2d Cir. 1998]). "Federal and state proceedings are 'parallel' for purposes of abstention when the two proceedings 'are essentially the same,' meaning that 'there is an identity of parties, and the issues and relief sought are the same.'" *Dalzell*, 923 F. Supp. 2d at 597 (quoting *Shields v. Murdoch*, 891 F. Supp. 2d 567, 577 [S.D.N.Y. 2012]). Nevertheless, "[p]erfect symmetry of parties and issues is not required. Rather, parallelism is achieved where there is a substantial likelihood that the state litigation will dispose of all claims presented in the federal case." *Shields*, 891 F. Supp. 2d at 577. "Further, if the court has 'any doubt' regarding the parallel nature of the two actions, the outcome should be resolved in favor of exercising federal jurisdiction." *Dalzell*, 923 F. Supp. 2d at 573-74. "Finally, if a court finds that the federal and state actions are not parallel, *Colorado River* abstention does not apply, whether or not issues of state law must be decided by the federal court." *Id.* (internal quotation marks omitted).

## IV. ANALYSIS

### A. Whether the State Action and the Present Action Are Parallel

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated by Defendants in their memorandum of law. (Dkt. No. 59, Attach. 34, at 11-12 [Defs.' Mem. of Law].) To those reasons, the Court adds the following analysis.

As an initial matter, the parties agree that the factual allegations in both the State action and the matter before this Court are identical. Therefore, this Court must consider whether the parties, issues, and relief sought in both actions are the same, but ultimately it must determine whether "there is a substantial likelihood that the state litigation will dispose of all claims presented in the federal case." *Shields*, 891 F. Supp. 2d at 577. Some courts have looked to the principles of collateral estoppel to determine whether litigation in another forum will dispose of all claims in a concurrent federal action. *See In re Chicago Flood Litig.*, 819 F. Supp. 762, 764 (N.D. Ill. 1993) ("The issue, therefore, is not whether there is an identity of parties in both forums, but whether the parties may be bound by the result in the state litigation under principles of collateral estoppel or issue preclusion."). Indeed, although Plaintiffs' argument that common law negligence is not the same as deliberate indifference is well taken, Defendants correctly argue that it is well established in this Circuit that collateral estoppel bars a plaintiff from bringing a § 1983 claim against individual officers after previously losing at trial against the State of New York in the Court of Claims. *See Shell v. Brun*, 362 F. Supp. 2d 398, 401 (W.D.N.Y. 2005) (stating that, "although the nature of a common law negligence claim is different than a federal civil rights claim, and although the Court of Claims action is brought against the State and not the individual officers, there is a clear identity of issue between them

warranting application of collateral estoppel"); *Ferguson v. Stevens*, 08-CV-0506, 2012 WL 32954, at *3 (S.D.N.Y. Jan. 6, 2012) ("Ferguson's argument that collateral estoppel does not apply because he now raises a constitutional cause of action is unavailing. Collateral estoppel bars the relitigation of the same set of facts, regardless of the particular causes of action raised. . . . It has already been decided that Stevens' actions were not negligent, as such, they could not be "wanton or malicious"–the showing necessary to meet the higher standard applicable to Eighth Amendment claims brought under Section 1983."); *Cox v. C.O. Colgane*, 94-CV-6361, 1998 WL 148424, at *5 (S.D.N.Y. 1998) ("That the issue was characterized as negligence on the part of the State, not as a individual violation of civil rights, does not diminish that the same underlying set of facts was necessarily decided in the initial forum."); *Wright v. Coughlin*, 85-CV-0624, 1987 WL 19633, at *2 (S.D.N.Y. Nov. 5, 1987) (finding federal civil rights action collaterally estopped by prior state negligence action because state action "conclusively resolved the same set of facts on which both claims exist[ed]"), *aff'd*, 868 F.2d 1268 (2d Cir. 1988).

Of course, the courts in the above-noted cases all appear to have had the benefit of hindsight in which the Court of Claims had already rendered a final decision for purposes of their collateral estoppel analysis. This is significant because, if Plaintiffs are successful in proving negligence and/or intentional tort in the State action, they would still need to prove deliberate indifference in order to be successful on their Eighth Amendment claims in this Court and collateral estoppel would not necessarily apply in their favor. *See Farmer v. Brennan*, 511 U.S. 825, 826 (1994) ("Deliberate indifference entails something more than negligence, but is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will results."); *Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir.

1996) ("[T]o state a cognizable section 1983 claim, the prisoner must allege actions or omissions sufficient to demonstrate deliberate indifference; mere negligence will not suffice."); *Phillips ex rel. Green v. City of New York*, 453 F. Supp. 2d 690, 727 (S.D.N.Y. 2006) ("Ordinary negligence does not by itself constitute deliberate indifference[.]"). Conversely, if Defendants are successful in the State action, they can potentially use that fact to their advantage by invoking collateral estoppel, as the above-cited cases indicate.

As a result, the Court cannot determine at this point whether Plaintiffs would in fact be collaterally estopped from pursuing their claims in this Court.[2] However, the Court finds that the parties and issues are essentially the same and that there is a substantial likelihood that the State action can dispose of all claims now pending in this Court should Defendants obtain a favorable disposition in that State action. Under these circumstances, the Court finds that the two actions are sufficiently identical to be considered "parallel." *See Ericksen v. Vill. of Willow Springs*, 876 F. Supp. 951, 958 (N.D. Ill. 1995) ("In the present matter, the state and federal actions are parallel because the state litigation is likely to dispose of the federal action under the doctrine of *res judicata*. Under *res judicata*, or claim preclusion, a prior judgment on the merits bars the same parties or their privies from re-litigating all issues which were raised and decided or which could have been raised in the prior action.").

---

[2] Specifically, "[t]here are two requirements for the application of collateral estoppel to an issue: (1) there must be an identity of issue which has necessarily been decided in the prior action and is decisive of the present action, and (2) there must have been a full and fair opportunity to contest the decision now said to be controlling." *Burgos v. Hopkins*, 14 F.3d 787, 792 (2d Cir. 1994) (internal quotations and citations omitted). Because the Court of Claims has not issued a final decision, this Court cannot determine what issues were actually decided by the Court of Claims, nor whether Plaintiffs had a "full and fair opportunity to contest the decision." *See Pack v. Artuz*, 348 F. Supp. 2d 63, 71 (S.D.N.Y. 2004) ("[C]ollateral estoppel cannot be applied to bar plaintiff's Eighth Amendment claim. First, the findings of the Court of Claims did not clearly and necessarily decide any issue that is dispositive of this claim. Second, plaintiff did not receive a full and fair opportunity to litigate the issues decided in the prior proceeding.").

B.   **Whether the *Colorado River* Factors Weigh in Favor of Abstention**

After carefully considering the matter, the Court answers this question in the affirmative, generally for the reasons stated by Defendants in their memoranda of law. (Dkt. No. 59, Attach. 34, at 11-18 [Defs.' Mem. of Law]; Dkt. No. 64, at 3-9 [Defs.' Reply Mem. of Law].) To those reasons, the Court adds the following analysis.

1.   **The First and Second *Colorado River* Factors**

As discussed above in Part II of this Decision and Order, both parties agree that these factors are neutral and, therefore, effectively weigh against abstention. *See Niagara Mohawk*, 673 F.3d at 101 ("Where a *Colorado River* factor is facially neutral, that is a basis for retaining jurisdiction, not for yielding it.") (internal quotation marks and citation omitted). However, the Court finds that the neutrality of these factors weighs only slightly against abstention. *See EMS Indus. Corp. v. Acciai Speciali Terni, USA, Inc.*, 99-CV-9050, 2000 WL 101233, at *3 (S.D.N.Y. Jan. 26, 2000) ("Factors one and two are neutral, thereby weighing only slightly against abstention.").

2.   **The Third *Colorado River* Factor**

As stated above, Defendants argue that this factor, which concerns the avoidance of piecemeal litigation, is their strongest argument in favor of abstention because (1) it would be a waste of this Court's resources to conduct a trial consisting of the same evidence that was already presented during the trial in the State action, and (2) there exists the possibility of inconsistent outcomes. (Dkt. No. 64, at 8 [Defs.' Reply Mem. of Law].)

Beginning with the second reason (i.e., the possibility of inconsistent outcomes), "the primary context in which [the Second Circuit has] affirmed *Colorado River* abstention in order

to avoid piecemeal adjudication has involved lawsuits that posed a risk of inconsistent outcomes not preventable by principles of *res judicata* and collateral estoppel." *Woodford*, 239 F.3d at 524 ("The classic example arises where all of the potentially liable defendants are parties in one lawsuit, but in the other lawsuit, one defendant seeks a declaration of nonliability and the other potentially liable defendants are not parties"). Granted, the concern for inconsistent outcomes, in and of itself, is not sufficient to warrant abstention. *See Mazuma Holding Corp. v. Bethke*, 1 F. Supp. 3d 6, 26 (E.D.N.Y. 2014) (stating that "the mere potential for conflicting outcome between the two actions does not justify abstention under the 'piecemeal litigation' factor") (internal quotation marks and citation omitted). However, the concern for inconsistent outcomes is certainly a factor weighing in favor of abstention. Here, as discussed above in Part IV.A. of this Decision and Order, the Court recognizes the potential for inconsistent outcomes as well as the potential for issue preclusion once a final decision is rendered in one of the two forums.

Turning to the first reason (i.e., a waste of the Court's resources), the Court agrees with Defendants that proceeding to trial in this matter as scheduled would be a waste of judicial resources given that a case has already been tried in the State action and a final decision is pending. In addition, the Court is concerned about the undue burden to Defendants (by forcing them to try essentially the same case in two courts), notwithstanding the fact that *res judicata* or collateral estoppel may ultimately cure an inconsistent outcome. *See Colony Ins. Co. v. Danica Grp., LLC*, 13-CV-1714, 2014 WL 4417353, at *7 (E.D.N.Y. Sept. 8, 2014) ("[C]ollateral estoppel would likely prevent the courts from reaching inconsistent outcomes, as Colony and Danica are parties to both actions, and each action requires the court to determine the issue of whether the Policies are enforceable. Nevertheless, forcing Danica to litigate in two courts

would be unduly burdensome to Danica. . . . Further, forcing two courts to adjudicate the Policies' enforceability would be a waste of judicial resources."). For all of these reasons, the Court finds that this factor weighs strongly in favor of abstention.

### 3. The Fourth *Colorado River* Factor

The parties agree that litigation of this matter was first commenced in the State action. Furthermore, as discussed above in Part I of this Decision and Order, a trial has already been conducted in the State action and a final decision will be issued after post-trial briefs are submitted and considered. Meanwhile, trial is scheduled to commence in this Court on July 17, 2017. Because the parties have not submitted the briefing schedule in the State action, this Court is unable to determine when a final decision in the State action can reasonably be expected and whether it is likely it will be issued before trial in this Court is completed. Nevertheless, because litigation was first commenced in the State action and proceedings in that forum are further ahead than they are in this Court, the Court finds that this factor weighs in favor of abstention.

### 4. The Fifth *Colorado River* Factor

In this proceeding, Plaintiffs seek to vindicate their federal constitutional rights under the Eighth Amendment of the U.S. Constitution and 42 U.S.C. § 1983. Significantly, the Court of Claims cannot hear claims based upon federal constitutional violations. *See Frederick v. State*, 23 Misc. 3d 1008, 1014 (N.Y. Ct. Cl. 2009) ("To the extent that any of Mr. Frederick's allegations assert a deprivation under the Federal Constitution, no action may be maintained in this Court against the State for alleged Federal Constitutional violations."). As a result, the Court finds that this factor weighs against abstention.

## 5. The Sixth *Colorado River* Factor

The Court begins by noting that it limits its discussion of this factor to the different forms of relief sought by Plaintiffs in both actions. After carefully considering the matter, the Court agrees with Plaintiffs that they are entitled to pursue punitive damages as well as attorneys' fees in this Court. Both forms of damages are not available in the Court of Claims.[3] As a result, the Court finds that this factor weighs against abstention. *See Woodford*, 239 F.3d at 525 (holding that the sixth *Colorado River* factor did not favor abstention because "[a]wards of attorneys' fees are not available on the claims asserted in the state-court actions, and hence the relief available is not the same. . . . Having properly brought their federal claims in federal court, they are entitled to pursue those claims and, if successful, to be awarded the remedies with which Congress sought to encourage that pursuit."); *New Beckley Min. Corp. v. Int'l Union, United Mine Workers of Am.*, 946 F.2d 1072, 1074 (4th Cir. 1991) ("A difference in remedies is a factor counseling denial of a motion to abstain. . . . The difference in remedies becomes more pronounced when one suit requires a jury and the other does not[.]"); *Barrington v. New York*, 806 F. Supp. 2d 730, 741-42 (S.D.N.Y. 2011) ("The Court therefore reads the [*Davidson v. Capuano*, 792 F.2d 275 (2d Cir. 1986)] line of cases for the proposition that a plaintiff who makes use of a limited state proceeding does not sacrifice claims to broader relief available under Section 1983 in federal court. In other words, nothing in *res judicata* doctrine requires a

---

[3] *See Sharapata v. Town of Islip*, 56 N.Y.2d 332, 338-39 (N.Y. 1982) (explaining that the Court of Claims Act § 8 does not permit punitive damages to be assessed against the State or its political subdivisions as "the twin justifications for punitive damages–punishment and deterrence–are hardly advanced when applied to a governmental unit"); *Mihileas v. State*, 266 A.D.2d 866 (N.Y. App. Div. 4th Dep't 1999) ("We reject the contention that claimant is entitled to an award of attorney's fees; such an award is expressly prohibited by Court of Claims Act § 27.").

plaintiff to choose between the limited right the State has given him and the more expansive right Congress has given him to vindicate violations of the Constitution of the United States."); *Pack v. Artuz*, 348 F. Supp. 2d 63, 69 (S.D.N.Y. 2004) ("[T]he Court of Claims does not have the power to grant the 'full measure of relief' sought in cases, such as the current one, where the plaintiff seeks to recover against state officials in their individual capacities."); *but see Ramsey v. Busch*, 19 F. Supp. 2d 73, 87 (W.D.N.Y. 1998) ("The objectives of *res judicata* will not be advanced if the instant action is permitted to proceed to trial solely to determine if punitive damages may be awarded."); *Livingston v. Goord*, 225 F. Supp. 2d 321, 327 (W.D.N.Y. 2002), *vacated in part on other grounds by* 153 F. App'x 769 (2d Cir. 2005) (following *Ramsey* and holding that "[i]t was plaintiff who chose to litigate these claims first in the Court of Claims. Having elected that remedy, having had a full and fair opportunity to litigate his claim in that court, and having been fully compensated for his injury, plaintiff should not be allowed to force the state to further defend against essentially the same claims in this Court simply so that plaintiff can attempt to pursue a claim for punitive damages").

### 6. Conclusion

As discussed above, on one end of the scale the fifth and sixth factors weigh against abstention (coupled with the first and second factors, which are neutral, weighing *slightly* against abstention). However, on the other end of the scale the third and fourth factors weigh in favor of abstention, with the third factor weighing *strongly* in favor of abstention. After carefully balancing these factors, the Court finds that they weigh in favor of abstention.

The Court notes that, while it is cognizant of the fact that it has an "unflagging obligation" to hear cases properly brought before it, *Niagara Mohawk*, 673 F.3d at 100, it finds

that the substantial risk for the waste of judicial resources, duplicative litigation, and an unseemly race to judgment must be given more weight. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983) ("[T]he most important factor in our decision to approve the dismissal [in *Colorado River*] was the clear federal policy . . . [of] avoidance of piecemeal adjudication.") (internal quotation marks omitted). These risks are exacerbated by the procedural posture of this case and the State action. More specifically, the fact that the State action has already been tried and the Court of Claims is in the process of rendering a final decision makes this situation relatively rare. Indeed, this Court has not been able to identify any cases in which *Colorado River* abstention was discussed in a context that shared a similar procedural posture to the present matter. The Court believes that the Court of Claims, after presiding over an eight-day trial and hearing from 31 witnesses and admitting more than 100 exhibits (Dkt. No. 59, Attach. 34, at 9 [Defs.' Mem. of Law]; Dkt. No. 64, at 8 [Defs.' Reply Mem. of Law]), should be given time to render its decision, without the potential of a conflicting jury verdict in this Court.

Finally, with respect to the fifth and sixth *Colorado River* factors, it is significant to note that this decision does not necessarily preclude Plaintiffs from pursuing their constitutional claims and different forms of relief in this Court. As discussed above in Part IV.A. of this Decision and Order, if Plaintiffs are successful in the State action, they may proceed to trial in this Court. It is only if Defendants are not found to be negligent in the State action that Plaintiffs will potentially be precluded from pursuing their claims in this Court.

Therefore, for all of the foregoing reasons, the trial of this matter will be stayed until the State action is concluded. At that time, the Court shall, after hearing from the parties, determine whether to lift the stay of this matter for further proceedings.

**ACCORDINGLY**, it is

**ORDERED** that Defendants' motion for a stay of the upcoming trial in this matter (Dkt. No. 59) is **GRANTED**, and this case is stayed until further Order of this Court; and it is further

**ORDERED** that the parties are given leave to file any necessary motions to lift the stay after proceedings in the New York State Court of Claims have concluded.

Dated: May 26, 2017
       Syracuse, New York

_____
Hon. Glenn T. Suddaby
Chief U.S. District Judge